■ CHERYL A. DALTON, Respondent, v ADIRONDACK SADDLE TOURS, INC., Appellant. [836 NYS2d 303]—

Spain, J. Appeal from that part of an order of the Supreme Court (Kramer, J.), entered March 2, 2006 in Schenectady County, which partially denied defendant's motion for summary judgment dismissing the complaint.

Plaintiff commenced this action seeking money damages for personal injuries that she sustained when she fell off a horse at defendant's horseback riding facility. The complaint alleged strict liability premised on vicious propensities of the horse, common-law negligence and breach of contract. On defendant's motion for summary judgment, Supreme Court dismissed the first cause of action but, finding issues of fact as to whether plaintiff assumed the risk of her injuries, declined to grant summary judgment on the common-law negligence or breach of contract causes of action. On defendant's appeal, we hold that the complaint should be dismissed in its entirety.

Defendant is a domestic corporation in the business of providing the public an opportunity to participate in trail rides on horseback. In June 2002, plaintiff visited defendant's facility accompanied by her two children and her niece. In preparation for the ride, plaintiff was asked about her riding experience and she informed defendant's employee that although she had ridden two or three times before, she had not ridden in over 25 years. Plaintiff reviewed a form explaining the risks of riding and was offered a helmet. She refused the helmet for herself, but accepted helmets on behalf of the three children. Defendant's employee assigned mounts to each rider and instructed them in the method of maneuvering the horses. Plaintiff was specifically informed that her mount—a horse named Patches—had a habit of stopping to graze and, when this occurred, she should pull up on the reins and use her heels to get the horse moving again.

The riders, consisting of plaintiff's group of four, a guide and the guide's minor son, commenced riding in single file on a beginner level trail with the guide in the lead and plaintiff bringing up the rear. As predicted, Patches stopped several times to graze and, each time, plaintiff successfully prompted him to run and catch up to the other horses. However, when plaintiff urged Patches to move after he had lingered one final time, he began running at a faster pace and, just before they caught up to the group, plaintiff lost her seating, fell and was injured.

A participant in a recreational activity such as horseback riding assumes risks which are "inherent in and arise out of" the nature of the activity (*Morgan v State of New York*, 90 NY2d 471, 484 [1997]) and "[i]t is well established that an inherent risk in sporting events involving horses is injury due to the sudden and unintended actions of the animals" (*Norkus v Scolaro*, 267 AD2d 666, 667 [1999]), including those actions which result in the participant "being thrown or falling" (*Tilson v Russo*, 30 AD3d 856, 857 [2006]; *see Turcotte v Fell*, 68 NY2d 432, 440-441 [1986]; *Joseph v New York Racing Assn.*, 28 AD3d 105, 108-109 [2006]; *Papa v Russo*, 279 AD2d 744, 745 [2001], *lv denied* 99 NY2d 507 [2003]). The experience of the participant certainly is relevant in deciding whether he or she appreciated and, thus, voluntarily assumed the risks of the activity (*see Turcotte v Fell, supra* at 440). However, some risks are so perfectly obvious that even a relatively inexperienced participant should be charged with knowledge of them, simply because they " 'inhere [in the sporting activity] so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball' " (*Morgan v State of New York, supra* at 483, quoting *Murphy v Steeplechase Amusement Co.*, 250 NY 479, 482 [1929, Cardozo, J.]).

Plaintiff elected to take part in activity where she knew she would be riding a horse and have the responsibility of guiding the animal along the trail. The allegations do not establish that Patches exhibited some physical defect which may have contributed to the fall (*see e.g. Brancati v Bar-U-Farm, Inc.*, 183 AD2d 1027, 1028-1029 [1992] [unshod horse fell, injuring rider]) or that he had any known, unruly and dangerous propensity (*see Campbell v City of New York*, 31 AD3d 594, 595 [2006]).

In our view, the risk that a horse might suddenly break into a run is one inherent in the activity of horseback riding. Further, in this case, the horse's movement was not entirely unexpected as plaintiff had urged the horse to catch up with the other horses. Had plaintiff not appreciated the risk of Patches running when she first mounted, she certainly must have become aware of that risk after the horse ran several times to catch up during the course of the trail ride (*see Joseph v New York Racing Assn., supra* at 108-109 [exercise rider assumed risk by proceeding a second time around track after noticing the wet surface]; *Papa v Russo, supra* at 745 [rider had fallen from horses before but continued to ride]). Notably, plaintiff never expressed concern or sought assistance on these occasions. Under these circumstances, defendant's motion for summary

judgment on the common-law negligence cause of action should have been granted because plaintiff's injuries were caused by an event inherent in the activity to which she voluntarily consented.

To the extent that it states a claim distinguishable from her common-law negligence cause of action, plaintiff's breach of contract cause of action is premised on her assertion that she did not receive the value of the trail ride because defendant failed to provide her with a mount suitable for riding. Given our holding that plaintiff's injuries were caused by an incident inherent to the activity of horseback riding, rather than by any defect or unreasonable behavior in her mount, we conclude that her breach of contract cause of action should also be dismissed (see *Jordan v Maple Ski Ridge*, 229 AD2d 756, 757 [1996]).

Cardona, P.J., Mercure, Mugglin and Lahtinen, JJ., concur. Ordered that the order is modified, on the law, with costs to defendant, by reversing so much thereof as partially denied defendant's motion for summary judgment; motion granted in its entirety and complaint dismissed; and, as so modified, affirmed.